UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GULF CATERING COMPANY FOR GENERAL TRADING AND CONTRACTING WLL, | § § § § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-09-cv-2990 |
| | § | |
| KELLOGG BROWN & ROOT SERVICES, INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Kellogg Brown & Root Services, Inc. ("KBR"), motion to dismiss pursuant to FED. R. CIV. P. 12(b)(7) (Docket Entry No. 7), the plaintiff's, Gulf Catering Company for General Trading and Contracting WLL ("GCC"), response (Docket Entry No. 12), KBR's reply (Docket Entry No. 13), GCC's response to KBR's reply (Docket Entry No. 16), KBR's sur-reply (Docket Entry No. 19), and GCC's response to KBR's sur-reply (Docket Entry No. 20).  After having carefully reviewed the pleadings, the motion, responses, replies, related attachments and the applicable law, the Court reserves ruling on KBR's motion to dismiss and compels joinder of Alpler Catering ("Alpler"), a non-party, with the express proviso that GCC shall have 45 days within which to join Alpler as a required party under Rule 19 and effect proper service of process on it.  Should GCC fail to join Alpler as a required party under Rule 19 or should it subsequently be determined that joinder of Alpler is not feasible, KBR's motion to dismiss shall be GRANTED.

## II. FACTUAL BACKGROUND

On or about December 14, 2001, KBR entered into a contract, entitled the "Logistics Civil Augmentation Program III" ("LOGCAP III"), with the United States Government to build and operate dining facilities for United States soldiers in remote locations throughout Iraq (hereinafter referred to as the "Prime Contract"). To assist in its performance under the Prime Contract, KBR entered into two subcontracts with Alpler: Subcontract 02HU-VC-SDF0741, dated October 20, 2005 ("KBR Subcontract 741"); and Subcontract 02HU-VC-SDF0740, dated November 18, 2005 ("KBR Subcontract 740") (collectively, the "KBR Subcontracts"). The period of performance under the KBR Subcontracts was December 10, 2005, through June 7, 2006, with options to extend such period from June 8, 2006, through December 4, 2006. The performance periods were later modified through Change Orders. Pursuant to the terms of the KBR Subcontracts, Alpler was to supply dining facility equipment and services and then submit invoices to KBR for review and approval. KBR would then process the invoices and, if approved, pay Alpler for the equipment and services provided.

Subsequent to this time, Alpler contacted GCC and obtained its agreement to perform certain services and supplies in support of Alpler's performance obligations under the KBR Subcontracts. On December 15, 2005, Alpler and GCC entered into a letter contract, which included a Subcontractor Agreement executed by and between Alpler and GCC, and provided that GCC, rather than Alpler, would perform the services under the KBR Subcontracts as a subcontractor to Alpler. Thereafter, Alpler and GCC agreed to set up an escrow account at Gulf Bank Kuwait (Account No. ****175) (the "Escrow Account"), located in GCC's home country, to provide GCC with access to payments received from KBR for work performed under the KBR Subcontracts. On January 30, 2006, GCC and Alpler submitted to Gulf Bank Kuwait a letter of

irrevocable standing instructions to transfer 100 percent of the proceeds placed in the Escrow Account to GCC's existing account at Gulf Bank Kuwait (Account No. ****285) (the "GCC Account").

In or around February or March of 2006, GCC, with KBR's knowledge, began providing services under the KBR Subcontracts.  GCC alleges that Alpler never performed any of the contracted services under the KBR Subcontracts prior to or after this date.  On or about April 20, 2006, Alpler sent KBR electronic fund transfer instructions relative to the Escrow Account.  On September 12, 2006, KBR acknowledged receipt of the instructions and confirmed that the April 20th transfer instructions were in effect.  On September 16, 2006, Alpler again sent KBR electronic fund transfer instructions relative to the KBR Subcontracts denoting "that all the proceeds of [the KBR Subcontracts] since the beginning of the subcontracts, must be electronically transferred to . . . [the Escrow Account]."

Despite Alpler's instructions, KBR refused to release any funds to the Escrow Account without further verification and approval from Alpler and GCC.  Thus, on or about September 26, 2006, Alpler and GCC executed the Agreement for Change in Payment Location, agreeing to transfer certain payment amounts under the KBR Subcontracts to GCC.  The purpose of the agreement was to transfer payments from Alpler's bank account in Turkey to the GCC Account in Kuwait.  KBR also executed the Agreement for Change in Payment Location, acknowledging its agreement to the terms contained therein.

On March 31, 2006, GCC submitted its first invoice for payment to KBR.  On or about October 3, 2006, KBR made payment to GCC by transferring $2,799,282.32 to the Escrow Account for the March 31 invoice, as well as for four other invoices.  On October 12, 2006, KBR transferred another payment for one invoice in the amount of $524,100.00 to the Escrow

Account. On March 7, 2007, KBR made another payment to GCC by transferring $1,990,546.80 to the Escrow Account as payment for five additional invoices. The aforementioned transfers were made by KBR to GCC as payment for its performance under the KBR Subcontracts.

On March 10, 2007, Alpler and GCC executed and entered into a Novation Agreement, whereby Alpler, as transferor, formally assigned its rights under the KBR Subcontracts to GCC, as transferee. More specifically, pursuant to the terms of the Novation Agreement, Alpler transferred all of its assets, liabilities, and contractual obligations, including its responsibilities under the KBR Subcontracts to GCC. The Novation Agreement included the following relevant provisions:

> (b) In consideration of these facts, the parties agree that by this Agreement –
>
> (6) All payments and reimbursements previously made by Contractor [KBR] to the Transferor [Alpler], and all the previous actions taken by the Contractor [KBR] under the contracts, shall be considered to have discharged those part of the Contractor's [KBR's] obligations under the subcontracts. *All payments and reimbursement made by Contractor [KBR] after the date of this Agreement in the name of or to the Transferor [Alpler] shall have the same force and effect as if made to the Transferee [GCC], and shall constitute a complete discharge of the Contractor's [KBR's] obligations under the contracts, to the extent of the amounts paid and reimbursed.* (emphasis added).
>
> . . .
>
> (8) The Transferor [Alpler] guarantees payment of all liabilities and the performance of all obligations that the Transferee [GCC] –
>
>> (i) Assumes under this Agreement; or
>> (ii) May undertake in the future should these contracts be modified under their terms and conditions. The Transferor [Alpler] waives notice of, and consents to, any such future modifications.
>> . . . .

(Docket Entry No. 7, Ex. 2).

Prior to its execution of the Novation Agreement, KBR contends that Alpler tendered several invoices, including invoice nos. 12, 13, and 14, dated January 27, 2007, February 2, 2007, and March 1, 2007, respectively, under KBR Subcontract 741, to KBR for processing and payment. The total amount due under the subject invoices was $1,337,764.94.

On June 8, 2007, KBR made payment to Alpler for invoice nos. 12, 13, and 14, via wire transfer to its bank account in Turkey. On or about August 28, 2007, Alpler and KBR executed Subcontract Change Order No. 6 relative to KBR Subcontract 741, extending the time period for the subcontract from March 10, 2007 through August 31, 2007, and incorporating the terms of the Novation Agreement entered into by Alpler and GCC.

On September 14, 2009, GCC commenced the instant action against KBR asserting claims for quantum meruit and attorneys' fees due to KBR's erroneous transfer of $1,337,764.94 to Alpler's bank account in Turkey for the subject invoices. GCC argues that it expected KBR's payment for the subject invoices in the normal course of business that had been established between it and KBR. It contends that despite KBR's erroneous transfer of $1,337,764.94 to Alpler's bank account in Turkey, KBR has never transferred payment for the subject invoices to the Escrow Account or to the GCC Account. It further contends that in response to its inquiry regarding the misplaced funds, a KBR representative, George Nguyen, admitted that KBR "mistakenly wired the money to the original [Alpler] account that was setup when the contract was initially awarded [to Alpler]." (Docket Entry No. 12, Ex. 15). Thereafter, GCC alleges that it notified Alpler of KBR's erroneous deposit and requested that it transfer the funds to the proper account. To date, Alpler has failed to respond to its request and KBR has failed to reverse the transaction and/or retrieve the funds and transfer such funds to it.

KBR now moves to dismiss this action for failure to join Alpler as a required party under Rule 19.

### III.     LEGAL STANDARD UNDER RULE 12(b)(7)

Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003) (citing FED. R. CIV. P. 19(a); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) (internal quotation omitted)). "It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *Wingate*, 327 F.3d at 438 (citing FED. R. CIV. P. 19(b); *Pulitzer-Polster*, 784 F.2d at 1308). Pursuant to Rule 19, a person, subject to service of process, and whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a)(1).

If a person who qualifies under Rule 19(a)(1) cannot be joined because joinder is not otherwise feasible, the district court must ascertain "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). Factors the district court must consider in making its determination include the following:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

*Id.*

"In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept the complaint allegations as true." *United States v. Rutherford Oil Corp.,* No. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009) (citing *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n.2 (7th Cir. 2001)). Nevertheless, the burden of proof remains on the moving defendant to demonstrate "that an absent party is indispensable and that the action should be dismissed." *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 199 F.R.D. 209, 211 (S.D. Tex. 2001) (citing *Nottingham v. General Am. Communications Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (rejecting defendant's argument to dismiss because the defendant failed to establish the necessary grounds)). Moreover, "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder. *Pulitzer-Polster*, 784 F.2d at 1309 (citing *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478 (6th Cir. 1972) (Tuttle, J., sitting by designation)). Further, in diversity cases such as the case sub judice, the issue of "[w]hether a party is a necessary or indispensable party under Rule 19 is governed by federal law." *SMI-Owen Steel Co.*, 199 F.R.D. at 211 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22, 88 S. Ct. 733, 19 L. Ed.2d 936 (1968) (holding that federal law governs though

"state law questions may arise in determining what interest the outsider has"); *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 (5th Cir. 1985)).

## IV. ANALYSIS AND DISCUSSION

Here, KBR argues that this case should be dismissed for failure to join a required party, Alpler. GCC, on the other hand, maintains that Alpler, as assignor of the KBR Subcontracts, is not a required party to the instant litigation between it, as assignee, and KBR, as the party owing under the contract. It contends that Alpler has no legitimate claim to KBR's admittedly mistaken payments and no interest in the outcome of the instant dispute. GCC further avers that Alpler's joinder is unnecessary for this Court to proceed in "equity and good conscience" so as to do a complete justice between it and KBR.

In accordance with Rule 19's two-step inquiry, this Court must first determine whether it is necessary that Alpler be joined as a party to the instant litigation. If the Court determines that Alpler's joinder is warranted, Alpler must be brought into the litigation. "[However] if [Alpler's] joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without [Alpler] or to dismiss the litigation." *Wingate*, 327 F.3d at 439. Factors relevant to this determination include: "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed." *Id.* (quoting *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997) (citing FED. R. CIV. P. 19(b) (other citations omitted)).

In line with this framework, this Court determines that Alper is a required party to instant litigation and should be joined if feasible, as the Court cannot accord complete relief between the

existing parties in its absence. First, it is abundantly clear that KBR, as general contractor, and Alpler, as subcontractor, entered into Subcontract 741 for the purpose of providing dining facility equipment and services to U. S. soldiers in Iraq. The invoices at issue in this dispute, specifically invoice nos. 12, 13, and 14, dated January 27, 2007, February 2, 2007, and March 1, 2007, respectively, refer to Alpler as the subcontractor of record. Additionally, the evidence presented reflects that Alpler submitted the invoices to KBR for payment. Moreover, on or about June 8, 2007, KBR transferred payment to Alpler for the services and equipment that are the subject of the invoices at issue in this case. GCC does not dispute that KBR made payment to Alpler on the subject invoices and thus, Alpler may be subject to liability for the payment rendered. Further, the Novation Agreement, formally reflecting Alpler's transfer of all of its contractual obligations relative to KBR Subcontract 741 to GCC, was not officially incorporated into KBR Subcontract 741 until around August 28, 2007, upon Alpler and KBR's execution of Subcontract Change Order No. 6.

 Although it is undisputed that Alpler assigned its rights under the KBR Subcontracts to GCC, certain terms within the parties' agreements appear to alter the rights obtained by GCC upon Alpler's assignment so as to make the typical assignment cases cited by GCC wholly inapplicable and distinguishable from the case at bar. For example, the express language of the Novation Agreement entered into by and between Alpler and GCC provides that KBR's payment to Alpler has "the same force and effect as if made to [GCC], and . . . constitute[s] a complete discharge of [KBR's] obligations under the contracts, to the extent of the amounts paid and reimbursed." To the extent that GCC challenges this provision and denies that KBR's payment to Alpler constitutes a complete discharge of its obligations under KBR Subcontract 741 with respect to the subject invoices, it puts the validity and applicability of the terms of the Novation

Agreement at issue in this dispute. To this end, the Court determines that a resolution of this action will necessarily require it to interpret the Novation Agreement and/or other related contracts. Thus, Alpler has an interest in this action and is so situated that the disposition of this action in its absence may serve to impair or impede its ability to protect its interest or leave KBR subject to a substantial risk of incurring double obligations under KBR Subcontract 741, with respect to the subject invoices. Accordingly, the Court finds that Alpler is a required party that must be joined pursuant to Rule 19. *See Siemens Bldgs. Techs., Inc. v. Jefferson Parish*, No. 03-CV-2272, 2004 WL 1837386, (E.D. La. August 12, 2004) (quoting *Niagra Mohawk Power v. Tonawanda Band*, 862 F. Supp. 995 (W.D.N.Y. 1994) *aff'd*, 94 F.3d 747 (2nd Cir. 1996) ("[I]n an action to set aside a contract, all persons who are parties to the contract may be affected by the determination of the action and are indispensable parties for the purposes of Rule 19.")); *see also Enter. Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 894 (10th Cir. 1989) ("'No procedural principal is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination are indispensable'"); *Ragan Henry Broad. Group, Inc. v. Hughes*, No. 91-CV-6157, 1992 WL 151308, *2 (E.D. Pa. June 19, 1992) (internal citations omitted) ("Generally, where rights sued upon arise from a contract, all parties thereto must be joined.").

However, because this Court is of the opinion that the parties have not sufficiently demonstrated that joinder of Alper is not feasible in this case and would divest this Court of subject matter jurisdiction, the Court will not dismiss GCC's claims under Rule 12(b)(7) at this time. Rather, it will compel GCC's joinder of Alpler under Rule 19.

## V. CONCLUSION

For the reasons stated above, the Court reserves ruling on KBR's motion to dismiss, with

the express proviso that GCC shall have 45 days within which to join Alpler as a required party and effect service of process on it. Should GCC fail to join Alpler as a required party under Rule 19 or should it be determined that joinder of Alpler is not feasible, KBR's motion to dismiss shall be GRANTED and a final judgment will be entered in this regard.

IT IS SO **ORDERED**.

SIGNED at Houston, Texas this 26th day of January, 2010.

_____
Kenneth M. Hoyt
United States District Judge